## CONSTRUCTION OF RULE COVERING DEMURRAGE CHARGES.

Common Pleas Court of Hamilton County.

THE BALTIMORE & OHIO SOUTHWESTERN RAILROAD CO. v. THE PROCTER & GAMBLE CO.

Decided, 1913.

*Rule—Promulgated by a Carrier and Fixing Demurrage Charges—Construed in Accordance with the Plain Meaning of the Words Used—And Not in Furtherance of the Evident Purpose of the Carrier.*

A rule embodied in a freight tariff, with reference to the charge to be made for use of cars not unloaded within forty-eight hours, will be construed in accordance with the plain and obvious meaning of the words employed, notwithstanding the purpose of the carrier was manifestly to fix a different charge from that so obtained.

*Harmon, Colston, Goldsmith & Hoadly,* for plaintiff.
*Paxton, Warrington & Seasongood,* contra.

GORMAN, J.

Decision on submission on agreed statement of facts.

Section 11472 of the General Code provides that parties to a question which might be the subject of a civil action, on filing an affidavit that the controversy is real and the proceedings in good faith to determine their rights, may agree upon a case containing the facts upon which the controversy depends and present a submission of it to any court of competent jurisdiction, which shall hear and determine the case, and render judgment as if an action were pending. By the provisions of Section 11473, General Code, the case, the submission and the judgment shall constitute the record, and by the provisions of Section 11474, the judgment shall be with costs, may be enforced, and shall be subject to reversal in like manner as if it had been rendered in an action, unless otherwise provided in the submission.

The controversy between the parties arises over the construction to be given to the part of Rule 10 of its local freight tariff under the caption of "a" which reads as follows:

"(a)   If any patron elects, the carrier will enter into an agreement with him to apply the average plan for the determination and settlement of demurrage charges, the basis of the average to be forty-eight (48) hours, fractions of days not to be taken into account, a credit of one day to be given on each car released within twenty-four (24) hours and a debit of one day to be charged against him for each car detained beyond forty-eight (48) hours, not more than seven days credit to be applied on any one car; balances to be closed at the end of each calendar month, neither debits nor credits to be carried over into the next month."

It is contended by the plaintiff in the case that the true intent and meaning of this part of Rule 10 is that when a car is held beyond the forty-eight hours time limit, provided for in the rule, and is subject to demurrage charges, there shall be charged against the party detaining the car a debit for each day of twenty-four hours that the car is held after the expiration of the forty-eight hours provided for in the rule; while it is the contention of the defendant company that where a car is held beyond the forty-eight hours provided for in the rule there shall be charged against the person or corporation holding the car but one day's debit, regardless of the length of time the car is held after the expiration of forty-eight hours.

Now the language of the agreement specially under consideration reads as follows:

"A credit of one day to be given on each car released within twenty-four (24) hours, and a debit of one day to be charged against him for each car detained beyond forty-eight (48) hours, nor more than seven days credit to be applied on any one car; balances to be closed at the end of each calendar month, neither debits nor credits to be carried over into the next month."·

The credit to be given to the shipper who receives the car is for the release of a car within twenty-four hours after it has been received and placed on the siding.

This part of the rule was obviously intended to encourage the shipper to release cars as soon as possible after they had been received by the consignee, as the railroad companies evidently considered the car was more valuable in use than lying idle as a warehouse on the siding of the shipper, and therefore, while the shipper was allowed forty-eight hours time after the placing of the car within which to unload and free the car, nevertheless the railroad company was offering a premium to the shipper if he released the car within twenty-four hours after receiving it.

This provision of the rule would operate to the mutual benefit of the carrier and the shipper and there is no question between the plaintiff and the defendant as to this part of the rule.

The controversy arises over the succeeding language of the rule, which reads as follows:

"And a debit of one day to be charged against him for each car detained beyond forty-eight (48) hours, not more than seven days credit to be applied on any one car."

Now it is manifest that the meaning of this language is, that there shall be a debit of but one day charged against the consignee or shipper for detaining a car beyond the forty-eight hours limit. The language is not susceptible of the meaning that there is to be a debit of one day for each twenty-four hours which the car is detained beyond the forty-eight hours. The court has no doubt that is what the carrier intended to provide in the rule, but by an oversight, or neglect, or misapprehension, it was not so stated in the rule.

It is contended, however, by counsel for the plaintiff that the words "not more than seven days credit to be applied on any one car" are superfluous and unnecessary unless they be taken in connection with the words preceding this clause. It is claimed that this language, in connection with the words immediately preceding it, indicate clearly that if there is to be but one day charged for the detention of a car beyond the forty-eight hours free time allowed, however long the car may be detained, then there can be no case in which the limitation of seven days credit shall be applied to any one car because a car could only be debited

for one day and would therefore never be entitled to more than one day's credit.

There is great force in this claim of the plaintiff, and if it were not for the plain words employed immediately preceding this clause, the court would be in accord with the contention of plaintiff's counsel that this language contemplated that there should be more than one day's debit charged against a car for its detention beyond the free time; but the court can not make contracts for the parties. Notwithstanding the fact that the court is of the opinion that the railroad company contemplated and intended to make a charge or debit against the holder of the car for each twenty-four hours it was held beyond the forty-eight hours free time, nevertheless, being called upon to construe the language of the rule, which is the contract between the parties, the court does not feel at liberty to interpolate into the rule language which was not incorporated therein by the parties themselves.

It is contended, however, that the Public Service Commission of Ohio interpreted this rule to mean what plaintiff's counsel claims it means. But shippers are not bound by an interpretation made by the Ohio Public Service Commission, nor is the court bound by the interpretation which is placed upon the rule by said commission. Furthermore, the construction laid down by the Public Service Commission of Ohio as to the meaning of this rule was in an *ex parte* proceeding, to which the defendant, the Procter & Gamble Company, was not a party and was not therefore concluded or bound by the finding of the commission.

The court is of the opinion that the plaintiff company took the view that this rule was subject to the construction claimed for it by the defendant company, because it appears from the record—the agreed statement of facts—that subsequent to the date of the order of the Public Service Commission of the state of Ohio, construing this rule, the plaintiff company filed a petition in the Court of Common Pleas of Franklin County, wherein, among other things, the plaintiff company and other railroad companies alleged that Rule No. 10, now under consideration, is

unreasonable in not providing for a debit of one day for each twenty-four hours or fraction thereof a car is detained beyond forty-eight hours. This would appear to be a very strong admission against the plaintiff in this case.

It further appears from the agreed statement of facts that about September 12, 1912, the Public Service Commission of Ohio, after a public hearing, ordered the plaintiff company to amend said Rule 10, now under consideration, and in pursuance of said order the plaintiff company issued its local freight tariff on September 20, 1912, to be effective October 1, 1912, and known as the car demurrage rules, covering said Rule 10, and amended said Rule 10 so as to conform with the ruling of the Public Service· Commission of Ohio, made on October .6, 1910, which ruling provided that there should be a debit or charge of one day for each twenty-four hours which a car was held beyond the free time of forty-eight hours.

The court is of the opinion that all these matters shown in the' record indicate that the plaintiff company, to say the least, saw that the construction of Rule 10 such as is contended for by the defendant company in this case would be claimed by the shippers and therefore took steps to amend the rule so as to avoid any ambiguity.

There is no question in this case about any cars being detained after October 1, 1912, but the controversy arises over cars that were detained by the defendant company prior to October 1, 1912, to-wit: cars detained in the months of June, July, August and September, 1912.

The aggregate amount claimed by the plaintiff company for these detentions amounts to $138, and is arrived at by debiting or charging the defendant company the sum of $1 for each day of twenty-four hours which the cars were detained beyond the forty-eight hours free time.

The defendant company admits that $6 is due and payable under Rule 10, as construed by it, and this amount is arrived at by debiting itself or charging itself with one day's charge or debit on each car detained beyond the forty-eight hours free time, regardless of the number of days it was held, and there

being six cars held beyond the free time the total amount which it claims to be due is $6.

The conclusion of the court is that the language of Rule 10 under consideration, and which is the subject of the controversy between the parties herein, means that the defendant shall be charged or debited for one day on each car beyond the free time of forty-eight hours, regardles of the number of days it was so detained, and that therefore the amount claimed by the plaintiff in this case is not the correct amount due, but that the amount due is the amount admitted by the defendant to be due for the detention of the plaintifl's cars.

This conclusion is not, perhaps, as satisfactory as it might be because of the doubt arising from the use of the language, "Not more than seven days credit to be applied on any one car," but in view of the plain words employed in the rule immediately preceding this language, the court is unable to see how it can construe the language to be other than the plain import of the words indicate.

The judgment of the court, therefore, is, that the plaintiff recover from the defendant the amount of $6, and this being a case in which the parties might very well disagree, the court is of the opinion that the costs of this action should be paid—one-half by the plaintiff and one-half by the defendant.

Judgment may be entered accordingly.